UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEATHER JANSEN,<br><br>      Plaintiff,<br><br>    v.<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION; DAVID C. BANKS, Chancellor of the New York City Department of Education; MARION WILSON, Superintendent of District 31 of the New York City Department of Education,<br><br>      Defendants. | **MEMORANDUM & ORDER**<br>23-CV-6756 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

  Plaintiff Heather Jansen has filed a *pro se* complaint under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the New York State Human Rights Law (N.Y. Exec. Law § 296 *et seq.*) against the New York City Department of Education ("DOE"), David C. Banks, in his official capacity, and Marion Wilson, in her official capacity.  ECF No. 1.  Plaintiff also moves for a Preliminary Injunction ("PI") and Temporary Restraining Order ("TRO") seeking the following relief:  (1) to be reinstated as the principal of P.S. 46 Albert V. Maniscalco Elementary School on Staten Island ("P.S. 46") until her lawsuit is resolved; (2) to restrain Defendants from engaging in discriminatory, harassing, and retaliatory actions against her; (3) to award her backpay; and (4) to award her costs and disbursements related to this action.  ECF No. 5 at 29–30 (Motion).  For the reasons set forth below, the motion is denied.

## FACTUAL BACKGROUND

Plaintiff alleges that she has been employed by the DOE for 22 years, and that she was appointed principal of P.S. 46 in March 2022. *Id.* at ¶¶ 1–2. She claims that Defendants improperly removed her from that position and demoted her to the role of a classroom teacher as part of a campaign of alleged discrimination, harassment, and unjust treatment that caused substantial harm to her professional reputation and standing. *Id.* at 2, ¶¶ 3–8, 10–14, 15, 17, 21, 36, 40–42. Plaintiff further alleges that her demotion was in retaliation for her refusal to participate in a cover-up of misconduct by a teacher at P.S. 46. *Id.* at ¶¶ 4–5, 24–26, 30–34, 38. Plaintiff alleges that she filed a number of complaints related to her treatment by Defendants, which have been ignored. ¶¶ 3, 9, 16, 22, 35, 36, 39.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that should only be granted when "the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007). "The standards for granting a TRO are the same as those governing preliminary injunctions." *Javino v. Pergament*, No. 13-cv-1951, 2013 WL 1952639, at *1 (E.D.N.Y. May 10, 2013). A party seeking injunctive relief through either a temporary restraining order or a preliminary injunction must "establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Conn. State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022).[1] Since

---

[1] Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

2

Plaintiff filed her motion for a TRO and PI *pro se*, her papers "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[2]

## **DISCUSSION**

Plaintiff cannot carry her burden of persuasion and show that her case merits the extraordinary and drastic remedies of a TRO and a PI because Plaintiff has not made a showing of immediate or irreparable harm. *Conn. State Police Union*, 36 F.4th at 62.[3]

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Home It, Inc. v. Wen*, No. 19-cv-7070, 2020 WL 353098, at *3 (E.D.N.Y. Jan. 21, 2020). The Court must consider "the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010). To show irreparable harm, the moving party must establish that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.* "Irreparable harm must be shown to be actual and imminent, not remote or speculative." *Kamerling v. Massanari*,

---

[2] Plaintiff is no longer proceeding *pro se* in this action – on August 18, 2023, counsel filed a notice of appearance on Plaintiff's behalf. ECF No. 14. However, on August 19, 2023, Plaintiff's newly retained counsel advised that Plaintiff intended to proceed with her previously-filed motion for a TRO and PI. ECF No. 15. Because Plaintiff filed her motion for a TRO and PI while proceeding *pro se*, the Court analyzes her papers under the more lenient standard afforded to *pro se* parties.

[3] Because "the standards for granting a TRO are the same as those governing preliminary injunctions," this order analyzes Plaintiff's entitlement to both forms of relief. *Javino*, 2013 WL 1952639, at *1.

295 F.3d 206, 214 (2d Cir. 2002).  Plaintiff alleges four cognizable grounds under which she stands to suffer irreparable harm if her TRO and PI are not granted.

  I.  **Financial and Personal Hardship**

Plaintiff argues that she faces "persistent and severe financial hardship" if her TRO and PI are not granted.  ECF No. 5 at 23 (Motion).  Although Plaintiff argues that "mere monetary compensation" cannot resolve her "financial turmoil," she provides no details or evidence to support this claim.  *Id.*  Plaintiff does not allege that she is now unemployed as a result of Defendants' action but instead states that she has been "demoted" to a role as a teacher rather than her prior position as principal of P.S. 46.  *Id.* at ¶ 40.  Plaintiff does not provide any details about how the salary of a teacher compares to the salary of a principal, but, to the extent that the salary of a teacher is less than that of a principal, such harm can be adequately redressed by money damages if Plaintiff prevails on her claim.  *Kamerling*, 295 F.3d at 214.

Plaintiff also argues that her demotion and treatment by Defendants has taken an emotional toll on both Plaintiff and her family that "align[s] with the jurisprudential concept of irreparable harm."  ECF No. 5 at 25.  The Court does not doubt that Plaintiff's changing employment has caused emotional strain.  But these psychological stressors, as alleged, are too speculative, and the Court sees no reason that these alleged harms could not be compensated through monetary relief.  *See Kamerling* 295 F.3d at 214; *see also De Jesus Moreno v. Nielsen*, 460 F. Supp. 3d 291, 300 (E.D.N.Y. 2020) (holding that psychological harm arising from uncertainty and upheaval is not a basis for injunctive relief).

  II.  **Damage to Plaintiff's Professional Reputation**

Plaintiff further argues that she faces irreparable harm to her personal and professional reputation and future job prospects that cannot be addressed by money damages.  ECF No. 5 at 20.  However, "absent extraordinary circumstances, irreparable harm is not established by loss of

4

income or position." *Shady v. Tyson*, 5 F. Supp. 2d 102, 109 (E.D.N.Y. 1998). "The injuries generally associated with a discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute the irreparable harm necessary to obtain a preliminary injunction." *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 248 (E.D.N.Y. 1998). Plaintiff alleges no more than the injuries generally associated with a discharge from employment in her motion. Accordingly, Plaintiff has not successfully demonstrated that she faces irreparable harm to her reputation that cannot be adequately addressed by money damages.

### III.   Violation of Plaintiff's Constitutional Rights

Plaintiff also alleges that Defendants' actions will cause her irreparable harm because they constitute a profound infringement upon her exercise of her constitutionally protected freedoms. ECF No. 5 at 22. It appears from Plaintiff's complaint and her motion that she alleges infringement of her equal protection rights in violation of the Fourteenth Amendment under 42 U.S.C. § 1981 and § 1983, as well as a violation of her First Amendment rights under 42 U.S.C. § 1983. ECF No. 1 at 6–7 (Complaint); ECF No. 5 at 16–19. She claims that Defendants violated her equal protection rights by treating her differently in the workplace and demoting her because of her race. With respect to her First Amendment claim, she alleges that her demotion violated her First Amendment right to report wrongdoing without fear of retaliation. ECF No. 5 at 17.

The mere "assertion of a constitutional injury is[, however] insufficient to automatically trigger a finding of irreparable harm." *Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012); *see also Weinstein v. Krumpter*, 120 F. Supp. 3d 289, 297 (E.D.N.Y. 2015) ("[A] bare assertion of a constitutional injury, without evidence convincingly showing the existence of noncompensable damages, is insufficient to automatically trigger a finding of

5

irreparable harm."). Rather, "in order to show irreparable injury, plaintiff must show a likelihood of success on the merits" of her constitutional claim." *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000); *see also Donohue,* 886 F. Supp. 2d at 150 (stating that, to warrant a finding of irreparable harm, the constitutional deprivation must be "convincingly shown").

### 1. Plaintiff's Fourteenth Amendment Claims

Plaintiff has not demonstrated a likelihood of success on the merits of her Fourteenth Amendment claims. To succeed on the merits, "a complaint [for discrimination on the basis of race] in a case under § 1983 must set forth in detail facts showing some intentional and purposeful deprivation of constitutional rights;" "bare allegations of racial discrimination will be found inadequate." *Moore v. Kibbee*, 381 F. Supp. 834, 838 (E.D.N.Y. 1974). And, to prevail on the merits of her § 1981 claim, Plaintiff "must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media, et al.,* 140 S. Ct. 1009, 1019 (2020).

Plaintiff's bare allegations that the complained-of treatment was due to her race are based on a story in the New York Post about Defendant Wilson, a text from Defendant Wilson that referenced Plaintiff's race, and vague assertions about the performance of Plaintiff's non-white colleagues relative to Plaintiff. ECF No. 5 at ¶¶ 15, 17, 21, 36. Plaintiff herself does not seem convinced that she was treated badly and demoted because of her race or that her race was the but-for cause of Defendants' treatment of her. Rather, Plaintiff suggests in both the complaint and the motion that her treatment may have been the product of her refusal to participate in a cover up of allegations of abuse and theft by another teacher. *Id.* at ¶¶ 4–5, 24–26, 31–32, 38. By putting forth another plausible basis for her alleged treatment by Defendants, Plaintiff undermines her own claims that she was deprived of her constitutional rights because of her race

6

under § 1981 and § 1983.  *See e.g., Dames v. JP Morgan Chase & Co.*, No. 22-cv-6962, 2023 WL 5047776, at *4 (E.D.N.Y. Aug. 8, 2023) (holding that plaintiff's acknowledgement of "an alternative possible explanation" for her treatment "undermine[d] a finding of discriminatory intent"); *Akyar v. TD Bank US Holding Co.,* No. 18-cv-379, 2018 WL 4356734, at *3 (S.D.N.Y. Sept. 12, 2018) ("[A] complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination.")

### 2.  Plaintiff's First Amendment Claims

With respect to Plaintiff's First Amendment claim that freedom of speech to report wrongdoing was chilled by Defendants' retaliation, the Second Circuit has held that "a chilling of the right to speak" cannot "logically be thawed by the entry of an interim injunction" because "the theoretical chilling of protected speech . . . stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.  *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985); *see also Savage v. Gorski*, 850 F.2d 64, 67–68 (2d Cir. 1988) ("Since the source of the chill is the permanent loss of appellees' jobs, retaining these positions pending resolution of the case will do nothing to abate that effect.").  Indeed, because "reinstatement and money damages could make [Plaintiff] whole for any loss suffered during" the period she did not retain her position, the "injury is plainly reparable and [Plaintiff has] not demonstrated the type of harm entitling [her] to injunctive relief."  *Savage*, 850 F.2d at 68.  Accordingly, Plaintiff's motion for an interim injunction is not the appropriate form of recourse for the First Amendment harm that she has allegedly suffered.

Regardless, Plaintiff has not demonstrated a likelihood of success on her First Amendment claim sufficient to merit a finding of irreparable harm.  *See, e.g., Turley*, 86 F. Supp.

2d at 295; *Donohue,* 886 F. Supp. 2d at 150.  In *Garcetti v. Ceballos*, the Supreme Court held that "when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  547 U.S. 410, 421 (2006).  Plaintiff is similarly situated to the respondent in *Garcetti* – she made the statements about a teacher's conduct that she now alleges resulted in her mistreatment and eventual demotion, pursuant to her official duties as the principal of P.S. 46.  *Id.*  Plaintiff did not act as a citizen when she "went about conducting [her] daily professional activities" but instead acted as a government employee.  *Id.* at 422.  Accordingly, "the fact that [her] duties sometimes required [her] to speak or write does not mean [her] supervisors were prohibited from evaluating [her] performance" as they saw fit.  *Id.*  Because Plaintiff was speaking pursuant to her official duties when she lodged complaints about a teacher's behavior, she cannot demonstrate a likelihood of success on her First Amendment claim.  *See Weintraub v. Bd. of Educ. of City Sch. Dist. Of City of N.Y.*, 593 F.3d.196, 203 (2d Cir. 2010) (finding that speech related to the safety of students and teachers is "pursuant to" and "part-and-parcel of" a teacher's official duties).

Plaintiff has not shown the requisite likelihood of success on the merits of her constitutional claims and has therefore failed to show that she will suffer irreparable harm if the Court does not issue the requested interim injunction.  *Donohue,* 886 F. Supp. 2d at 150.

IV. **Plaintiff's Collective Bargaining Rights and Upcoming Arbitration**

Finally, Plaintiff alleges that she will suffer irreparable harm to her collective bargaining rights if the Court does not grant an interim injunction.  Plaintiff states that one of her three arbitrations is upcoming and that any delay or interference caused by the Court not granting a preliminary injunction could potentially render any subsequent arbitration award entirely ineffective.  ECF No. 5 at 23.  However, Plaintiff fails to articulate a basis for this statement.  *Id.*

Additionally, to succeed in obtaining an injunction on the basis of a pending arbitration, a party must show "some likelihood of success" in "obtaining the award in aid of which the injunction is sought." *Hoh v. Pepsico, Inc.*, 491 F.2d 556, 561 (2d Cir. 1974).  Again, Plaintiff's papers fall short in this regard.  While Plaintiff does not state the award she hopes to receive as a result of her pending arbitration, it appears that she hopes to be reinstated as the principal of P.S. 46.  However, Plaintiff has not demonstrated that she is likely to succeed in obtaining this outcome.  Although Plaintiff has proffered a number of exhibits in support of her motion, many of which appear to be unverified transcriptions of audio recordings,[4] she has not articulated facts on which the Court can rely to support a finding that she is likely to succeed in her efforts to be reinstated as the principal of P.S. 46 after arbitration.  ECF No. 8 (Exhibits to Motion).

In light of the facts presented here, the Court finds that Plaintiff has failed to demonstrate irreparable harm sufficient to merit the issuance of a TRO or a PI.  Because Plaintiff is unable to establish irreparable harm, she is not entitled to equitable relief, regardless of her chances of success on the merits of her claims.  Accordingly, Plaintiff's motion is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a PI and TRO is DENIED because Plaintiff cannot establish that she will suffer irreparable harm if she is not granted the relief that she seeks.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 20, 2023

---

[4]  Plaintiff does not explain how or by whom these transcripts were created, what audio recordings they are based on, or how Plaintiff obtained these audio recordings.