UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEATHER JANSEN,<br><br>　　　　　　　　　Plaintiff,<br><br>　- against –<br><br>THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCTION, DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education and MARION WILSON, in her official capacity a Superintendent of District 31 of the New York City Department of Education,<br><br>　　　　　　　　　Defendants. | Civil Case No. 1:23-cv-06756-HG |

**PLAINTIFF'S OPPOSITION TO MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..………………………………………………….………..4

PROCEDURAL AND FACTUAL BACKGROUND…………………….………………....…4

ARGUMENT………………………………………………………………………………….11

        I.      Legal Standard Governing a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6)

        II.     Plaintiff Properly Asserts Her 42 U.S.C § 1983 *Monell* Claim

        III.    Plaintiff's Title VII Discrimination Claim Should Proceed

        IV.    Plaintiff Sufficiently Pled Her Disparate Treatment, Hostile Work Environment and Retaliation Claims

        V.     Plaintiff Withdraws Her § 740 Whistleblower Claim

CONCLUSION……………………………………………………………………………… 18

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                         Page(s)

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213, 227-29, 132 L. Ed. 2d 158, 115 S. Ct. 2097(1995)……………………………………………………………………………….16

*Agosto v. N.Y.C. Dept. of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020)……………………………….13

*Allen v. Egan*, 359 F. Supp. 2d 220…………………………………………………………13,15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………………………………………….12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………………………………..12

*Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018)……………………………12

*Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)…………………………..19

*Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)…………………………………………12

*Duplan v. City of New York*, 888 F.3d 612, 620-21………………………………………….…..13

*Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)…………………………………....16

*Kirkland v. Cablevision Sys.*, 760 F.3d 223………………………………………….…………17

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)………………………….……16,17,18

*Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020)…………………………………..12

*Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000)………………………….…………………18

*Monell v N.Y. C. Dept. of Soc. Serv.*, 436 U.S. 658 (1974)……………………………………..16

*Patane v. Clark,* 508 F.3d 106, 115 (2d Cir. 2007)………………………………….................18

*Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)………………...…………13

*Odermatt v. New York City Dep't of Educ.*, 694 Fed. Appx. 842……………………………….14

*Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012)………………………………………………14

*Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)…………………………………..16

*Ryan v. New York City Dep't of Educ.*, No. 11-Civ.-1628 (JBW),
    2011 U.S. Dist. LEXIS 118352, at *8 (E.D.N.Y. Oct. 12, 2011)…………………….....19

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)………………………………………………………………………………....…16,17

*Selvon v. City of N.Y.,* 2015 U.S. Dist. LEXIS 104421, at *4-5
    (E.D.N.Y. Aug. 10, 2015)……………………………………………………………….12

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)……………......12,17

*Yick Wo v. Hopkins*, 118 U.S. 356, 373-74, 30 L. Ed. 220, 6 S. Ct. 1064 (1886)……………….16

**PRELIMINARY STATEMENT**

Plaintiff Heather Jansen ("Jansen") brings claims of race discrimination and retaliation against Defendants THE CITY OF NEW YORK ("City"), NEW YORK CITY DEPARTMENT OF EDUCTION ("DOE"), DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education ("Banks") and MARION WILSON, in her official capacity a Superintendent of District 31 of the New York City Department of Education ("Wilson") (referred to collectively as "Defendants") in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the New York Labor Law § 740 ("NYLL"), the First Amendment and the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and asserts they are sufficiently pled in the First Amended Complaint ("FAC"; see Docket. No. 31)[1]. For the reasons stated herein, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss the Amended Complaint in its entirety.

**PROCEDURAL AND FACTUAL BACKGROUND**

In September 2002, DOE hired Plaintiff[2] as a Teacher and promoted her to Education Administrator ("EA") in September 2018. Se e ECF Docket No. 31, ¶ 43. In March 2021, Defendant Wilson was appointed the Superintendent of District 31. See Id., ¶44. On August 15, 2021, Plaintiff was promoted to Principal[3]. See *Id*., ¶45. On January 1, 2022, Mayor Eric Adams appointed Banks as Chancellor. Banks began implementing his newly drafted city-wide Inclusive

---

[1] The Amended Complaint is attached to the Declaration of Olivia M. Clancy as Exhibit 1.
[2] Plaintiff is a Caucasian female.
[3] When she began her Principalship as an Interim Acting Elementary School Principal, the school was academically failing, on the New York State Persistently Dangerous list and had a 90% economically disadvantaged student body. See *Id*., ¶¶ 46, 47.

-4-

Teacher Recruitment and Hiring Initiative ("ITRHI") policies to effect the Defendants' "Vision" to cease hiring Caucasian Principals and hire only people of color - policies now present in DOE's hiring guidelines[4], which Wilson became responsible for carrying out. *Id*., ¶¶ 48, 49. Banks effected an official municipal policy and custom causing Plaintiff's demotion based not on her performance, but her race, constituting discrimination on its face. As the Superintendent in District 31, Wilson is subject to the authority of Banks in all areas of municipal policymaking. Banks qualifies under the applicable law as a municipal policymaker within Defendant City. *Id*., ¶¶ 50, 51. On March 16, 2022, Plaintiff was officially appointed Principal of P.S. 46. *Id*., ¶ 52.

On May 16, 2022, Wilson reprimanding Plaintiff for sending an email to her DOE email account in late March regarding Plaintiff being investigated. Wilson stated that she now had to self-report because of the Plaintiff's actions. *Id*. ¶¶ 55, 56. In July 2022, Plaintiff began her second year as an untenured Principal.[5] On August 22, 2022, Parent Coordinator, Tina DiGregorio resigned following an incident involving inappropriate text messages she sent to a male Teacher. Plaintiff reported the incident to the Special Commissioner of Investigation ("SCI") as directed by DOE's Legal counsel, Lisa Becker ("Becker"). *Id*., ¶¶ 57-59. On August 31, 2022, during a mandated Principal's Retreat, Plaintiff was placed in a different Inquiry Group by Wilson. Wilson had taken issue with and tried to remove in the past the following three other Principals in this Inquiry Group: Lorrie Brown, Lisa Esposito and Erica Mattera. On November 8, 2022, Plaintiff received an email notifying her of an investigation in which she was the subject of[6]. OSI's review of the Zoom meeting resulted in an unsubstantiated.[7] On November 10, 2022, Plaintiff received

---

[4] The DOE policies are present in the guidelines as of May 2023.
[5] After four years serving as a Principal, Plaintiff would be eligible to receive tenure.
[6] The case identified as OSI Case #: 22-04593X. The anonymous complaint spawning this investigation alleged Plaintiff called her staff racist during a virtual meeting, muted them and showed preferential treatment to some Teachers over others.
[7] As no further action could be taken by the DOE, the case was closed.

an email scheduling her first PPO for the school year on November 14, 2022.

On January 12, 2023, Wilson instructed Plaintiff not to evaluate classroom Teachers, suggesting that she would handle any potential issues arising from this. When Plaintiff had requested permission to leave her office to conduct observations of Teachers, Wilson denied the request, citing her willingness to "take the hammering from Central." Wilson later denied giving this instruction and subsequently gave Plaintiff an unfavorable performance evaluation specifically citing Plaintiff's failure to evaluate classroom Teachers. Wilson referenced her and Plaintiff's respective backgrounds, mentioning that she was from the Bronx and Plaintiff was from Brooklyn. Wilson negatively discussed Plaintiff's performance stating, "This dumb little black girl from the Bronx, I have my log of assistance." *Id*., ¶¶ 63-65.[8] On February 1, 2023, Wilson claimed Plaintiff failed to inform her when she left the school building for a mandatory Principal's Meeting earning her a disciplinary meeting from Wilson – no other Principals had the requirement to notify her. *Id*., ¶¶ 66-67. On February 13, 2023, Wilson expressed her intention to remove Plaintiff from her role as Principal accusing her of making things personal, jeopardizing Wilson's job.[9] On February 13, 2023, Wilson held an impromptu meeting with approximately ten Teachers who Plaintiff supervised at P.S. 46 and tried to persuade the Teachers, specifically Andrea Perau ("Perau") into sharing negative information about Plaintiff to turn the staff against her to facilitate termination. However, when Perau began to speak in Plaintiff's defense, Wilson called her "delusional" and continued to incite a mutiny.[10] *Id*., ¶¶ 68-70. Wilson suggested the

---

[8] This action again violating Plaintiff's rights as outlined in articles I, IV, V and XVIII of the CBA and APPR between the CSA and DOE, which clearly state that written feedback must be provided within a 45-day period. Plaintiff received a negative PPO based on an observation conducted in the previous school year - not permitted.
[9] This was related to Plaintiff's complaint that Wilson instructed her not to evaluate Teachers but then negatively evaluated her for not completing these evaluations in contradiction to her instructions setting Plaintiff up to receive illegitimate discipline.
[10] Wilson asked Perau to read an email, written by Plaintiff, aloud to everyone present. This email was a request to deny probation for the kindergarten Teacher, Perau citing three confirmed OSI cases for her failure to supervise

Teachers were misguided in their trust for Plaintiff as their direct supervisor, and that they should instead trust her. She emphasized she did not want this conversation to leave the room. Subsequently, Wilson gave Plaintiff a negative performance review citing a lack of trust among Teachers.[11] Furthermore, Wilson made an unfounded accusation against Plaintiff, alleging that Plaintiff had made derogatory comments about the Teachers, including an accusation of racism, during the previous school year. *Id.*, ¶¶ 71-72.

On February 15, 2023, Wilson gave Plaintiff another negative review, which did not mention that since November 21, 2022, Plaintiff had been complying with Wilson's instruction not to leave her office. There were eight colleagues who were even further behind in completing their observations. Among these eight colleagues, six are individuals from BIPOC backgrounds. The seventh colleague, while white, retired at the end of the school year, and the eighth colleague, also white, is known to have a close personal relationship with Wilson. None of these eight colleagues received adverse evaluations as Plaintiff had. On November 18, 2022, Plaintiff's cell phone was stolen by Teacher, Grace Seddio-DiMaio ("DiMaio"), who was arrested for the theft. Wilson punished Plaintiff for following Defendants' policies and procedures of reporting DiMaio. *Id.*, ¶ 73. On February 17, 2023, CSA lodged a DOE complaint against Wilson on behalf of the Plaintiff. DOE disregarded this complaint against Wilson for discrimination, harassment and abusive treatment of Plaintiff.[12] On March 4, 2023, a front-page story in the New York Post addressed complaints related to Wilson alleging she wrote "anti-white texts" containing phrases indicating a preference for non-white principals. A parent was quoted that Wilson openly

---

students. Wilson told Perau Wilson was the reason she still had a job in an attempt to garner loyalty from her and the rest of the room.

[11] Wilson herself attempted to incite but failed as a Teacher in the meeting provided an audio recording of the meeting to Plaintiff after it concluded.

[12] The CSA complaint stated Wilson infringed upon her rights as stipulated in Article X of the CSA-DOE Agreement. This includes the Anti-Retaliation Provision (Article 16) from the Memorandum of Agreement dated February 12, 2020 and Article XVIII from the collective bargaining agreement.

discussed her aim to hire only people of color moving forward for positions at Staten Island schools. *Id.*, ¶¶ 74-75. A Brooklyn Principal voiced concerns raised by colleagues asserting many Assistant Principals and Principals reported that District 31[13] had spoken about hiring only Black administrators to fill vacancies. Several tenured administrators in Staten Island chose to leave for other districts out of fear of being targeting for termination in the near future because they were white - Matt Barone (Principal), Susan Barone (Assistant Principal ["AP"]) and Jennifer Lagano (AP)[14]. Wilson then sent a letter to Plaintiff indicating "Consideration to Discontinue". *Id.*, ¶¶ 76-77. Before Plaintiff was Principal, P.S. 46's performance in both English Language Arts ("ELA") and Mathematics was among the lowest 5% in the district. The school had also received a "Persistently Dangerous" designation from New York State, which required monthly support meetings to establish systems and structures to ensure a safe environment for staff and students. Due to Plaintiff's competence, the "Persistently Dangerous" designation was removed. Wilson deployed support staff and conducted unannounced visits to investigate Plaintiff. Despite this harassment, the school remained safe due to Plaintiff's effective systems. *Id.*, ¶¶ 78-79.

During the 2021-2022 school year, District 31 employed fifteen Principals who are BIPOC. Plaintiff outperformed 47% in ELA and 73% in Mathematics. On March 20, 2023, CSA filed an Intent to Arbitrate due to the Defendants' lack of response to the anti-retaliation complaint filed on February 17, 2023. On April 7, 2023, CSA sent a letter to Defendants stating that Wilson's arbitrary and capricious actions were the reason Plaintiff's removal as Principal was unjustified. DOE agreed to temporarily postpone Plaintiff's removal pending further review. *Id.*, ¶¶ 80-82. On April 24, 2023, Wilson directed Plaintiff cover up a case of physical abuse of a student,

---

[13] District 31 containing Public School 46 where Plaintiff worked.
[14] These individuals all lived and worked on Staten Island but transferred to Brooklyn after Wilson became Superintendent.

fraudulently alter documents and disregard witness accounts. Plaintiff refused. Wilson's motivation for this directive was to protect Dimaio whose father has significant political influence as a former New York State Judge. Wilson refrained from taking any negative action against this Teacher despite physically abusing a student on the premises during school hours. *Id*., ¶ 83. On April 27, 2023, Plaintiff received a telephone call from the Borough Safety Director instructing her to contact the New York Police Department ("NYPD") the following morning regarding the April 24th incident involving Dimaio. Plaintiff emailed DOE Legal, Becker copying Wilson to inform them of these instructions. On April 28, 2023, the AP of P.S. 46 told staff members about a communication between Wilson and Sean Rotkowitz. The purpose of this communication was to warn Teacher, Dimaio against coming to work to avoid a potential arrest.[15] *Id*., ¶¶ 84-85.

On April 30, 2023, Plaintiff was reassigned to the District Office and not to return to P.S. 46. Following an unexpected reassignment to the District Office allowing for Superintendent Wilson and her team to harass Plaintiff, she suffered significant mental distress causing her to apply for leave under the FMLA due to anxiety and depression. Her leave was approved for the period from May 1, 2023, to June 30, 2023. *Id*., ¶¶ 86-87. On May 1, 2023, Nicholas Rumola, who had witnessed the physical mistreatment of a student by DiMaio, was suspended without any given reason. On May 2, 2023, Plaintiff was emailed that the OSI investigation against Dimaio was being recalled. A note in the case file indicated a telephone call had been received from a person named DOE Legal, Becker to recall the investigation. Wilson permitted Dimaio to continue teaching without any repercussions. *Id*., ¶¶ 88-90. In response, parents contacted Banks directly as well as the media calling for Wilson's and Dimaio's removals. On May 4, 2023, Wilson directed AP, Tara Forde to alter DOE's Online Occurrence Reporting System ("OORS") report.

---

[15] That same day, Dimaio contacted the school office around 7:30 a.m. to report sickness and did not come to work. *Id*., ¶¶ 84-85.

Wilson specifically instructed her to modify the report to falsely indicate that Wilson had only learned of Dimaio's physical abuse on May 3rd not April 24th. She complied. *Id*., ¶¶ 91-92. The physically abused child's parent sued DOE and Dimaio.[16] During May 1-June 2, 2023 - Plaintiff's FMLA leave - she received threatening emails from Defendants pressuring her to attend meetings, and three unfounded disciplinary letters from Wilson.[17] *Id*., ¶¶ 93-94. Wilson sent a text and Facebook message to a colleague commenting on the UFT's failure to secure a "No Confidence" vote against Plaintiff to help get rid of her. Wilson stated, "She [Jansen] probably didn't know what hit her when they pulled her white ass out" of the school building. *Id*., ¶¶ 95-96. On June 2, 2023, Plaintiff, still on FMLA leave, received an email from Wilson informing her of her discontinuance due to alleged poor performance based on inaccurate PPOs.[18] *Id*., ¶¶ 97-98. Wilson then emailed denying Plaintiff tenure[19] demoting her from EA to Teacher.[20] On August 30, 2023, Plaintiff received her new assignment to her last district of tenure in Brooklyn. On September 4, 2023, Wilson *personally* requested Plaintiff be transferred back to work in a Staten Island school to directly supervise Plaintiff to ensure her termination. On September 5, 2023, Plaintiff returned to work as a Teacher at P.S. 54 in Staten Island. *Id*., ¶ 102. On October 12, 2023, Plaintiff emailed OSI for an update on Case #: 20235033 involving her May 9, 2023 complaint of discrimination

---

[16] The suit alleged defendants allowed Dimaio to continue teaching, despite a documented history of similar abusive behavior including previous substantiated complaints, lawsuits and arrests, all of which did not result in any consequences for Dimaio.

[17] Two of these letters violated Plaintiff's rights as outlined in Article X of the Agreement between the CSA and NYCDOE, including Article VIJ and the CBA as well as subsequent Memorandums of Agreement ("MOAs"). *Id*., ¶¶ 93-94. Plaintiff attempted to address these issues through the grievance process. Initially, the letters were submitted as part of a Step 1 grievance, but Wilson did not respond. The matter was then escalated to a Step 3 grievance with Banks, but this too went unanswered. Currently, Plaintiff is awaiting arbitration to resolve this grievance.

[18] Furthermore, three disciplinary letters, also under arbitration, were cited as additional evidence in the decision to discontinue, which are subject to allegations of contractual rights violations by Plaintiff. *Id*., ¶¶ 97-98.

[19] Wilson made this decision without providing any reasoning.

[20] Wilson caused Plaintiff's annual salary to decrease significantly. On June 10, 2023, DOE proposed reinstating Plaintiff to the role of an EA to CSA. However, this offer was contingent upon Plaintiff withdrawing all of her complaints previously lodged against Wilson. Plaintiff refused this offer resulting in further retaliation against Plaintiff. *Id*., ¶¶ 100-101.

and retaliation against Wilson. OSI stated that investigation was closed[21]. On October 13, 2023, Hughes-Noboa notified Plaintiff that OSI concluded allegations against her were unsubstantiated, but she still exercised "poor judgment in her actions." *Id*., ¶¶ 106-107. Plaintiff remains employed as a Teacher with Defendants. *Id*., ¶¶ 108-110.

## ARGUMENT

### I.      Legal Standard Governing a Rule 12(b)(6) Motion to Dismiss

The motion to dismiss standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the Court accepts all facts as true and "draw[s] all inferences in [plaintiff's] favor." Id. The question is not whether plaintiffs are "likely to prevail, but whether" they include enough allegations to "nudge[] their claims across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 87 (2d Cir. 2015) (quotation omitted). Nor must plaintiffs plead a prima facie case. *Mandala v. NTT Data*, Inc., 975 F.3d 202, 208 (2d Cir. 2020). Instead, they simply must allege enough facts to "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"[22]

### II.     Plaintiff Properly Asserts Her 42 U.S.C. § 1983 *Monell* Claim

Plaintiff properly asserts a *Monell* Claim against Defendants under 42 U.S.C § 1983. The Fourteenth Amendment provides public employees with the right to be "free from discrimination*." Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Public employees may utilize § 1983 to bring suit against a municipality for employment discrimination when "execution

---

[21] Plaintiff had never been interviewed prior to case closing.
[22] *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 694 (1978); *see also Selvon v. City of N.Y.,* 2015 U.S. Dist. LEXIS 104421, at *4-5 (E.D.N.Y. Aug. 10, 2015) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury.").

To state a claim under § 1983 against a municipality, "the plaintiff must allege facts showing: (1) the existence of a municipal or local government entity policy, custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights." *Sykes v. N.Y.C. Hous. Auth.*, 2022 U.S. Dist. LEXIS 53626, at *13 (S.D.N.Y. Mar. 24, 2022) (*citing Monell,* 436 U.S. at 692)); *see also Agosto v. N.Y.C. Dept. of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) ("The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."). Plaintiff is not required to identify a written policy. *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) ("To be sure, 'official policy' often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."). Plaintiff's § 1983 claim succeeds as (1) a jury could reasonably find that Defendants held a municipal policy using race as a determinative factor in hiring decision; and (2) that ITRHI[23] policy caused Jansen's demotions.[24] Notably, the City's prior Mayor Bill de Blasio's appointment of former Chancellor

---

[23] The policy attached to the Declaration of Olivia M. Clancy as Exhibit 2.
[24] Plaintiff acknowledges the Second Circuit's holding in *Duplan v. City of New York*, 888 F.3d 612, 620-21 concluding that "42 U.S.C. § 1983 provides the sole cause of action against state actors alleged to have violated § 1981." Plaintiff's case is distinguishable still as the FAC sufficiently pled the challenged actions were performed

-12-

Richard Carranza to lead the DOE and his desire to diversify by filling high-level positions at the DOE based primarily on race demoting Caucasian qualified employees resulting in civil case No. 1:21-cv-07555-MKV[25] sets the stage for Defendants' continuation of this initiative in NYC public schools to remove Caucasian employees to replace them with people of color under the guise of equality. On January 1, 2022, Mayor Eric Adams appointed Banks as DOE's Chancellor. With the City's approval, Banks implemented his city-wide ITRHI policies to effect the Defendants' "Vision" to cease hiring Caucasian principals and hire only people of color - policies now present in DOE's hiring guidelines.[26] Wilson shared and actualized this discriminatory directive from Banks and promoted a racialized atmosphere within District 31 which demoralized Caucasians. *Id*., ¶¶ 48, 49. Banks effected an official municipal policy and custom causing Plaintiff's demotion based not on performance, but her race, constituting discrimination on its face. Banks qualifies under the applicable law as a municipal policymaker within the City. *Id*., ¶¶ 50, 51. This policy had a direct impact on Plaintiff as a Principal, an employee of the DOE for approximately 20 years, who was removed from her role and where she excelled. Plaintiff suffered constitutional deprivations arising directly out of this newly instituted governmental custom. Banks and Wilson demonstrated a disfavoring of Caucasian DOE employees evident in training sessions Plaintiff was forced to participate in. During a training session in fall 2023, one of the training slides for staff stated, "**[s]imilar to whiteness, mathematics holds unearned privilege in society…in much of the West and the colonized world, mathematical proficiency is…a proxy for intelligence**."[27] The 2023 training's clear

---

pursuant to the policy and/or custom of misconduct Plaintiff identified which is necessary to assert liability against a municipality.[24]

[25] In an Order dated January 23, 2024, Judge Mary Kay Vyskocil denied in part and granted in part Defendants' Rule 56.1 motion for summary Judgement.

[26] The DOE policies are present in the guidelines as of May 2023.

[27] This image of the training slide is attached to the Declaration of Olivia M. Clancy as Exhibit 3 and incorporated by reference based on the allegations in the FAC; see Docket No. 31, ¶ 42.

animus towards "whiteness" as "unearned privilege" demoralizes Plaintiff as a Caucasian employee of the DOE and is racially discriminatory. Contrary to Defendants' position, Plaintiff is confident the true purpose of the ITRHI policy is to cease hiring Caucasian principals and hire only people of color (*see* FAC, ¶ 48, 49) based upon the language used, Plaintiffs' treatment from Wilson and specific training she received as an educator, which blatantly fostered a racially motivated agenda to favor people of color and demoralize Caucasians based on solely their race.

### A. Plaintiff's First Amendment Claim Survives

"Speech by a public employee is protected by the First Amendment only when the employee is speaking 'as a citizen ... on a matter of public concern.'" *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012); see *Odermatt v. New York City Dep't of Educ.*, 694 Fed. Appx. 842. Plaintiff's speech was protected even though she is a public employee. To state a claim for retaliation under the First Amendment to the United States Constitution, U.S. Const. amend. I, a plaintiff must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. Generally, almost any speech is protected under the First Amendment. Plaintiff's speech served matters of the public interest by protecting the community's youth from an abusive adult. As an adult and mother, Plaintiff felt obliged to prevent a child from being abused and spoke out against an illegal practice that would harm the surrounding community. Therefore, she was subject to a First Amendment violation.

### B. Plaintiff's Fourteenth Amendment Equal Protection Claims Survives As She Sufficiently Alleges Discriminatory and Retaliatory Animus

A property interest is required for a due process claim, not for an equal protection claim. The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike. *Allen v. Egan*, 359 F. Supp. 2d 220. Plaintiff 's FAC

identifies her race as Caucasian, that she was indeed qualified for her position as Principal as she removed P.S. 46 off the Persistently Dangerous list and generated statistical evidence her students' were performing at a higher level since she became Principal compared to others suffered, and she endured harassment and demotion to position of Teacher taking place under circumstances giving rise to an inference of discrimination. *Blythe v. City of New York*, 963 F. Supp. 2d 158, 171-72 (E.D.N.Y. 2013). Defendants' argument Plaintiff's Due Process Clause claim fails due to her positions of Principal and EA being "probationary" is nonsensical and all too convenient. Plaintiff simply was not considered a probationary employee by DOE at any time. A plaintiff claiming denial of equal protection rights can proceed according to several theories:

> "A plaintiff could point to a law or policy that "expressly classifies persons *on the basis of race*." [*Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)] (citing [**8] *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213, 227-29, 132 L. Ed. 2d 158, 115 S. Ct. 2097 . . . (1995)). Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373-74, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus."

Plaintiff has sufficiently alleged Bank's policy actualized by Wilson targeted her not based on her competence as a Principal but because she was white, and she became apart of a systematic removal of leadership to be replaced by people of color. Therefore, as the § 1983 Claim is under federal and not state law, the Supreme Court's standard enunciated in *Monell* is applicable hereto and based upon the governmental practice and custom of routine racial discriminatory treatment perpetrated by Defendants, the claim should survive.

### III.    Plaintiff's Title VII Discrimination and Disparate Treatment Claims Should Proceed

To state a *prima facie* case of race discrimination and disparate treatment[28] under Title VII, "a plaintiff must proffer evidence that (1) [s]he belongs to a protected group; (2) [s]he was qualified for his position; (3) h[er] employer took an adverse action against h[er]; and (4) the adverse action occurred in circumstances giving rise to an inference of race discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223. Plaintiff's race discrimination claim is sufficiently pled. Defendant's argument that Plaintiff failed to plead an inference of discrimination in the FAC would improperly require her to plead the elements of a *prima facie* case—a requirement the Supreme Court has squarely rejected. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511-12 (2002). Indeed, this Court has questioned whether the non-precedential decisions that rely on *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) to require a plaintiff to plead facts showing the comparators are similar in all material respects improperly impose a higher standard than required under *Swierkiewicz*. *Nguedi v. Fed. Rsrv. Bank of N.Y.*, 2017 WL 5991757, at *7 (S.D.N.Y. Dec. 1, 2017). The Second Circuit has repeatedly clarified that a plaintiff need not plead a *prima facie* case of discrimination. E.g., *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 84 (2d Cir. 2015). Indeed, Plaintiff has met her burden of pleading facts that support a minimal inference of discriminatory motivation. One way to support an inference of discriminatory motivation is by showing that Plaintiff was treated "less favorably than a similarly situated employee outside of her protected group." *Littlejohn*, 795 F.3d at 312. Plaintiff provided sufficient instances of Wilson's targeting of her for removal based on her race and in retaliation for lodging complaints of her misconduct detailing a work environment wherein Caucasian Principals are treated less favorably than people of color along with citing the policy, historical agenda of the

---

[28] *Littlejohn v. City of New York*, 795 F.3d 297, the disparate treatment claim under Title VII, § 1981 and § 1983 is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas. See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

City, its Mayors and DOE to increase diversity through hiring based on race. Therefore, Plaintiff's Title VII discrimination claim survives.

### IV. Plaintiff Sufficiently Pled Her Hostile Work Environment and Retaliation Claims

To state a hostile work environment claim, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive - that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106. Due to Defendants' racially discriminatory policy and Wilson's retaliation when she lodged complaints of her actualization of Banks's ITRHI policy, Plaintiff was removed from her role as a Principal, returned to her previous position as an EA and then denied tenure in that role earning her the designation of Teacher depriving her of the higher Principal salary she previously earned. *Id.*, ¶ 99.

Plaintiff sufficiently alleges that Defendants retaliated against her as "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action" under Title VII. *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007). "Protected activity" encompasses "participation" and "opposition." *Littlejohn*, 795 F.3d at 316. The participation clause covers only involvement with formal EEOC proceedings. The opposition clause protects any "informal protests of discrimination," including making complaints to management and objecting to discrimination in the industry in general. *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000). Indeed, to qualify under the opposition clause, the plaintiff need not even establish the conduct she opposed was in fact a Title VII violation—she "need only prove that she was acting under a good faith belief that the activity was of the kind covered by the

-17-

statute." *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir. 1993). Plaintiff filed numerous grievances with her Union lodging complaints against Wilson after she demoted her based on her race, revealed she has a bias against Caucasians by allegedly sending racist texts messages about removing Caucasian DOE employees form their positions, which on March 24, 2023 was memorialized on the NY Post's front page. See ECF Docket No. 31, 75, 93-94, 97-98, 100-101.

Accordingly, Plaintiff sufficiently pled her hostile work environment and retaliation claims.

### V.     Plaintiff Withdraws Her § 740 Whistleblower Claim

Plaintiff withdraws her § 740 whistleblower claim as section 740 does not apply to public employers. *Ryan v. New York City Dep't of Educ.*, No. 11-Civ.-1628 (JBW), 2011 U.S. Dist. LEXIS 118352, at *8 (E.D.N.Y. Oct. 12, 2011).

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied in its entirety.

Dated:  January 26, 2024                                 SHEGERIAN & ASSOCIATES

By: *Olivia Clancy*
Olivia M. Clancy, Esq.
*Attorneys for Plaintiff*
**HEATHER JANSEN**
90 Broad Street, Suite 804
New York, New York 10004
Tel.: (212) 257-8883
Fax: (212) 804-7299
oclancy@shegerianlaw.com

## **CERTIFICATE OF SERVICE**

      I, Olivia M. Clancy, hereby certify that a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Memorandum of Law of Defendants' Motion to Dismiss the Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 26, 2024.

Dated: January 26, 2024                                                                                  */s/ Olivia M. Clancy*